UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

DAWN M RARDIN,                          )
                                        )
              Plaintiff,                )
                                        )
       vs.                              )        No. 1:16-cv-00511-SEB-MPB
                                        )
NANCY A. BERRYHILL,[1]                  )
Acting Commissioner of                  )
Social Security,                        )
                                        )
                                        )
              Defendant.                )

**REPORT AND RECOMMENDATION ON**
**APPROPRIATE DISPOSITION OF THE ACTION**

        This matter was referred to the Magistrate Judge under 28 U.S.C. § 636(b)(1)(B) and Fed.

R. Civ. P. 72(b) for a Report and Recommendation as to its appropriate disposition. (Docket No.

15). Plaintiff Dawn Rardin seeks judicial review of the Social Security Administration's final

decision deeming her ineligible for Disability Insurance Benefits and Supplemental Security

Income. The matter is fully briefed. (Docket No. 16, Docket No. 21, Docket No. 22). It is

recommended that the District Judge **REMAND** the decision of the Commissioner of the Social

Security Administration finding that Plaintiff Dawn Rardin is not disabled, pursuant to sentence

four of 42 U.S.C. § 405(g) for further consideration, consistent with this opinion.

**Introduction**

        On November 28, 2012, Dawn M. Rardin filed an application for disability and Disability

Insurance Benefits under Title II of the Social Security Act and for Social Security Supplemental

Security Income disability benefits under Title XVI of the Social Security Act. She is alleging

---

[1] At the time this case was filed, Carolyn W. Colvin was the Acting Commissioner of the Social Security
Administration. Nancy A. Berryhill became the Acting Commissioner on January 20, 2017. When a public
officer ceases to hold office while an action is pending, the officer's successor is automatically substituted
as a party. Fed. R. Civ. P. 25(d). Later proceedings should be in the substituted party's name and the court
may order substitution at any time. *Id.*

disability beginning January 1, 2010. Her application was denied initially and on reconsideration. A hearing was requested and held on February 27, 2015, before Administrative Law Judge (ALJ) William E. Sampson. On May 5, 2015, the ALJ denied Ms. Rardin's application. On January 12, 2016, the Appeals Council denied Ms. Rardin's request to review the ALJ's decision, thereby making the ALJ's decision the final decision of the Social Security Commissioner. 20 C.F.R. § 404.981; *Schmidt v. Astrue*, 496 F.3d 833, 841 (7th Cir. 2007). On March 7, 2016, Ms. Rardin filed this civil action under 42 U.S.C. § 405(g) for review of the Commissioner's decision.

## Standard for Proving Disability

To prove disability, a claimant must show she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Plaintiff is disabled if her impairments are of such severity that she is not able to perform the work she previously engaged in and, if based on her age, education, and work experience, she cannot engage in any other kind of substantial gainful work that exists in significant numbers in the national economy. 42 U.S.C. § 1382c(a)(3)(B). The Social Security Administration ("SSA") has implemented these statutory standards by prescribing a five-step sequential evaluation process. 20 C.F.R. § 404.1520.

Step one asks if the claimant is currently engaged in substantial gainful activity; if she is, then she is not disabled. Step two asks whether the claimant's impairments, singly or in combination, are severe. If they are not, then she is not disabled. A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). The third step is an analysis of whether the claimant's impairments, either singly or in combination, meet or medically equal the criteria of any of the conditions in the

Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"). The Listings include medical conditions defined by criteria that the SSA has pre-determined are disabling, so that if a claimant meets all of the criteria for a listed impairment or presents medical findings equal in severity to the criteria for the most similar listed impairment, then the claimant is presumptively disabled. *Sims v. Barnhart,* 309 F.3d 424, 428 (7th Cir. 2002).

If the claimant's impairments do not satisfy a listing, then her residual functional capacity (RFC) is determined for purposes of steps four and five. RFC is a claimant's ability to do work on a regular and continuing basis despite her impairment-related physical and mental limitations. 20 C.F.R. § 404.1545. At the fourth step, if the claimant has the RFC to perform her past relevant work, then she is not disabled. The fifth step asks whether there is work in the relevant economy that the claimant can perform, based on her vocational profile (age, work experience, and education) and her RFC. If so, then she is not disabled.

The individual claiming disability bears the burden of proof at steps one through four. *Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987). If the claimant meets that burden, then the Commissioner has the burden at step five to show that work exists in significant numbers in the national economy that the claimant can perform, given her age, education, work experience, and functional capacity. 20 C.F.R. § 404.1560(c)(2); *Young v. Barnhart,* 362 F.3d 995, 1000 (7th Cir. 2004).

**Standard for Review of the ALJ's Decision**

Judicial review of the Commissioner's (or ALJ's) factual findings is deferential. This Court must affirm the ALJ's decision unless it lacks the support of substantial evidence or rests upon a legal error. *See, e.g.*, *Nelms v. Astrue,* 553 F.3d 1093, 1097 (7th Cir. 2009); 42 U.S.C. § 405(g). Substantial evidence means evidence that a reasonable person would accept as adequate

to support a conclusion. *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). The ALJ—not the Court—holds discretion to weigh evidence, resolve material conflicts, make independent factual findings, and decide questions of credibility. *Richardson v. Perales*, 402 U.S. 389, 399-400 (1971). Accordingly, the Court may not re-evaluate facts, reweigh evidence, or substitute its judgment for the ALJ's. *See Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999).

The ALJ is required to articulate a minimal, but legitimate, justification for his decision to accept or reject specific evidence of a disability. *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004). The ALJ need not address every piece of evidence in his decision, but he cannot ignore a line of evidence that undermines the conclusions he made. The ALJ must trace the path of his reasoning and connect the evidence to his findings and conclusions. *Arnett v. Astrue*, 676 F.3d 586, 592 (7th Cir. 2012); *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000).

## Analysis

### I. The ALJ's Sequential Findings

The ALJ found that Ms. Rardin had met the insured status requirement of the Social Security Act and that she had not engaged in substantial gainful activity since January 1, 2010, the alleged onset date—therefore, the ALJ proceeded to step two of the analysis. (Docket No. 13-2 at ECF p. 17).

At step two, the ALJ determined that Ms. Rardin, who was forty-eight years old at the time of the alleged onset date, had a severe impairments of lumbar degenerative disc disease, left shoulder osteoarthritis and tendinosis status post arthroscopic surgery, chronic obstructive pulmonary disease (COPD) secondary to a tobacco use disorder, coronary artery disease (CAD) and hypertension (HTN), an obese body habitus, fibromyalgia, and an affect and anxiety disorder. (Docket No. 13-2 at ECF p. 17); *See* 20 C.F.R. §§ 404.1571 *et seq.*, and 416.971 *et seq.*

The ALJ also determined that Ms. Rardin had the following non-severe impairments: periodic leg movement syndrome (PLMS) and gastroesophageal reflux disease (GERD). ([Docket No. 13-2 at ECF p. 18](#)).

The ALJ found that Ms. Rardin's alleged impairments of obstructive sleep apnea (OSA) and attention deficit hyperactivity disorder (ADHA) were neither confirmed diagnoses on the record nor did the record contain evidence that the claimant required medical treatment for these specific impairments. Thus, the ALJ found that these impairments were not medically determinable. ([Docket No. 13-2 at ECF pp. 18-19](#)). In regards to Ms. Rardin's mental impairments, the ALJ considered the four function areas set out in the disability regulations, i.e., the "paragraph B" criteria. ([Docket No. 13-2 at ECF p. 20](#)). The ALJ found that, (1) Ms. Rardin's activities of daily living were mildly limited, noting the contradictions between her testimony and the evidence that she lives independently and medical reports that she had no hygienic deficiencies; (2) that her social functioning was mildly limited, noting that the claimant's testimony that she had troubles with crowds was difficult to reconcile with her claims of not wanting to be alone and with no clinically noted social interactive issues; (3) that her concentration, persistence, or pace were moderately limited, noting that the claimant's subjective claims were given some deference due to her GAF scores, but that no new and material evidence suggested greater limitations; and (4) that she had no episodes of decompensation for an extended period. ([Docket No. 13-2 at ECF pp. 20-22](#)).

At step three, the ALJ found that Ms. Rardin's combination of impairments did not meet or medically equal the severity of one of the listed impairments in [20 C.F.R § 404, subpart P, Appendix 1](#). ([Docket No. 13-2 at ECF p. 19](#)). In regards to the claimant's coronary artery disease (CAD) and hypertension (HTN), the ALJ found that the effects of these impairments failed to

meet or medically equal Listing 4.00 or 4.04. *Id.* In regards to claimant's degenerative disc disease and osteoarthritic issues, the ALJ found that the record was devoid of evidence meeting the requirements in Listing 1.02 and 1.04. *Id.* The ALJ found that claimant's chronic obstructive pulmonary disease (COPD) secondary to tobacco use failed to meet Listing 3.02 because the requisite level of dysfunction was not met. *Id.* In regards to Ms. Rardin's fibromyalgia, the ALJ noted that SSR 12-2p provides that fibromyalgia cannot meet a listing in appendix 1 because it is not a listed impairment. *Id.* The ALJ also noted that he considered the exacerbatory impact of claimant's obesity when considering her other physical impairments. *Id.*

Prior to Step four, the ALJ determined that Ms. Rardin had the RFC to perform light work with the following limitations:

> [O]ccasionally climb ramps and stairs, balance, stoop, kneel, and/or crouch. The claimant can never crawl, or climb ladders, ropes, or scaffolds. The claimant can only occasionally reach overhead with the left upper extremity, but she can frequently reach in all other directions. The claimant must avoid more than occasional exposure to extreme temperatures, humidity, and pulmonary irritants such as fumes, odors, dusts, and gases, as well as work at unprotected heights. Lastly, due to focus, concentration, persistence and/or pace limitations due to any cause, the claimant is further limited to work comprised of simple, routine[,] and repetitive tasks.

(Docket No. 13-2 at ECF p. 23).

The ALJ concluded that Ms. Rardin could not perform any past work, consistent with the vocational expert's (VE) opinion. (Docket No. 13-2 at ECF p. 32). Ms. Rardin had previously worked as a fast-food cook. *Id.* Ms. Rardin was classified as younger individual age 18-49, on the alleged disability onset date, but subsequently changed age category to closely approaching advanced age, with limited education and an ability to communicate in English. (Docket No. 13-2 at ECF p. 33).

The ALJ found that there were a significant number of jobs in the economy that Plaintiff could still perform. Based on the testimony of the VE and, considering the claimant's age, education, work experience, and RFC, the ALJ concluded she would still be able to perform work as a marker, routing clerk, and a photo-finisher. *Id.*

II. **Review of Plaintiff's Assertions of Error**

   A. **The ALJ did not err in his analysis of Ms. Rardin's subjective complaints regarding fibromyalgia, but on remand must include a complete analysis as to whether Ms. Rardin's medically determinable impairment (MDI) of fibromyalgia medically equals a listing or whether it medically equals a listing in combination with at least one other MDI.**

Ms. Rardin asserts that the ALJ committed two separate errors during his Step 3 analysis of her fibromyalgia. (Docket No. 16 at ECF pp. 15-18). First, Ms. Rardin asserts that the ALJ erred by discrediting her subjective complaints because of a lack of objective findings. (Docket No. 16 at ECF pp. 15) Second, she further asserts that because fibromyalgia is not a listed impairment, the ALJ should have determined whether fibromyalgia medically equaled a different listing or whether it medically equaled a listing in combination with at least one other medically determinable impairment. (Docket No. 16 at ECF p. 17).

The Commissioner responds that SSR 12-2p requires the medically determinable impairment of fibromyalgia be evaluated in the same manner as symptoms for all impairments and, therefore, the ALJ is not required to accept Ms. Rardin's subjective allegations regarding pain merely because she was diagnosed with fibromyalgia. (Docket No. 21 at ECF pp. 9-10). Moreover, she asserts that the ALJ was entitled to rely on state agency physicians' opinions, which opined that Ms. Rardin's condition did not meet or equal a listed impairment.

The court first turns to Ms. Rardin's contentions that the ALJ erred by discrediting her subjective complaints related to fibromyalgia. Fibromyalgia, which is a rheumatic disease,

cannot be confirmed by objective laboratory tests. *See Hawkins v. First Union Corp. Long-Term Disability Plan*, 326 F.3d 914, 916 (7th Cir. 2003) (citing *Sarchet v. Chater*, 78 F.3d 305, 306-07 (7th Cir. 1996)). But "[a] distinction exists . . . between the amount of fatigue or pain an individual experiences, which as *Hawkins* notes is entirely subjective, and how much an individual's degree of pain or fatigue limits his functional capabilities, which can be objectively measured." *Holmstrom v. Metro. Life Ins. Co.*, 615 F.3d 758, 770 (7th Cir. 2010) (quoting *Williams v. Aetna Life Ins. Co.*, 509 F.3d 317, 322 (7th Cir. 2007)).

Accordingly, it is not enough that Ms. Rardin has been diagnosed with fibromyalgia. *See Hawkins*, 326 F.3d at 916 ("'Some people may have such a severe case of fibromyalgia as to be totally disabled from working, but most do not and the question is whether [the claimant] is one of the minority'") (quoting *Sarchet*, 78 F.3d at 306-07). The ALJ must determine whether the evidence regarding Ms. Rardin's subjective pain limits her objective functional capabilities. *Manley v. Barnhart*, 154 Fed. Appx. 532, 536 (7th Cir. 2005) ("[C]laims of disability based on amorphous pain disorders such as . . . fibromyalgia often must center around the subjective complaints of the patient, since they have few objective indicators . . . But the severity of these disorders varies, and the claimant's subjective complaints need not be accepted insofar as they clash with other evidence in the record"); *see also Estok v. Apfel*, 152 F.3d 636, 640 (7th Cir. 1998) (A fibromyalgia diagnosis is insufficient to show a person is disabled—the fibromyalgia must also be severe).

The ALJ's credibility determination is typically afforded special deference. *Sims v. Barnhart*, 442 F.3d 536, 538 (7th Cir. 2006). By itself, the absence of objective evidence is not enough to discredit the presence of substantive complaints, but if the record both supports and detracts from the claimant's allegations, "the resolution of competing arguments based on the

record is for the ALJ, not the court." *Donahue v. Barnhart*, 279 F.3d 441, 444 (7th Cir. 2002). A credibility determination "must contain specific reasons for the finding on credibility, supported by the evidence in the case record." *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006). While it is true that subjective complaints are more important when assessing fibromyalgia, once fibromyalgia is identified as a medically determinable impairment, the symptoms are evaluated in the same way as those for all medically determinable impairments under the two-step process set forth in SSR 96-7p.[1] SSR 12-2p.

The ALJ evaluated Ms. Rardin's subjective statements about her symptoms, including those symptoms possibly related to her fibromyalgia diagnosis. The ALJ noted difficulty in reconciling claimant's testimony that she quit work due to her symptoms, with the report she provided to the consultative examiner that stated she quit working because her family relocated. (Docket No. 13-2 at ECF p. 24). Similarly, the ALJ explained that Ms. Rardin's statements regarding her symptomology were inconsistent throughout the medical record, were inconsistent with her abilities reflected in the medical records, and were unsupported by the medical professionals' observations reflected in the record. (Docket No. 13-2 at ECF pp. 24-25). The ALJ further noted that despite claims of total disability, Ms. Rardin continued to clean apartments, which suggested that her functional abilities exceeded the limitations claimed. (Docket No. 13-2 at ECF p. 24).

With specific regard to her rheumatology appointments, the ALJ noted that the claimant's subjective complaints continued to be irreconcilable with the subjective claims, including no gait or grip deficiencies. (Docket No. 13-2 at ECF p. 26). The ALJ noted that, despite Ms. Rardin's

---

[1] On March 28, 2016, SSR 16-3p became effective to issue new guidance regarding how a disability claimant's statements about the intensity, persistence and limiting effects of symptoms are to be evaluated. However, SSR 16-3p does not apply retroactively and thus SSR 96-7p governed the ALJ's subjective analysis.

tenderness to palpation in all seventeen (17) fibromyalgia points, the clinician found no synovitis or fibromyalgia trigger points. *Castile v. Astrue*, 617 F.3d 923, 929-30 (7th Cir. 2010) (affirming denial of benefits where claimant had 18 out of 18 tender points on fibromyalgia test and "ALJ reasonably concluded that [claimant's] litany of alleged pain and other symptoms were 'not entirely credible' insofar as establishing proof of her inability to work," and noted that no doctor had found she could not work).

The ALJ must build a logical bridge from the record to his conclusion, *Murphy v. Colvin*, 759 F.3d 811, 815 (7th Cir. 2014) and he has done so here. His opinion includes both his final conclusion, as well as explanations, thus building a logical bridge from the record to his conclusion. *Id.* As discussed above, his opinion includes the evidence he is considering, including objective medical evidence; inconsistency in Ms. Rardin's testimony; Ms. Rardin's daily activities; and the explanations as to why he found this evidence irreconcilable with the degree of Ms. Rardin's subjective complaints related to her fibromyalgia.

As a final note, this court disagrees with Plaintiff's contentions that the ALJ "played doctor" by deciding what should be found in the evidence and then denying Ms. Rardin benefits when he did not find the preconceived items. Indeed, an ALJ must not play doctor by making their own independent medical findings. *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996). However, that proposition applies in instances where an ALJ has improperly substituted his judgment for that of the medical expert or where he makes his own judgment without reliance on medical evidence. It is not impermissible for an ALJ to draw conclusions, i.e., bridge a logical gap, from medical evidence or other authority to his legal conclusions. Here, the ALJ has done the latter and this distinguishes this case from *Rohan*, where the court found that the ALJ did not

rely on any medical evidence or authority when determining that the claimant's efforts were incompatible with a diagnosis of major depression. *See id.*

Ms. Rardin also alleges the ALJ committed error with regards to her fibromyalgia diagnosis, in that he failed to determine whether it medically equalled a listing or whether it in combination with at least one other medically determinable impairment equalled a listing. (Docket No. 16 at ECF p. 17). SSR 12-2p recognizes that at step 3, the ALJ must consider whether the person's impairment meets or medically equals the criteria of any of the listings in the Listing of Impairments in appendix 1. SSR 12-2p. It further recognizes that fibromyalgia is not a listed impairment in appendix 1 and, therefore, when a claimant has a medically determinable impairment of fibromyalgia, the ALJ must determine whether fibromyalgia medically equals a listing (for example, listing 14.09D in the listing for inflammatory arthritis), or whether it medically equals a listing in combination with at least one other medically determinable impairment. *Id.*

Here, the ALJ determined Ms. Rardin's fibromyalgia was a medically determinable impairment. (Docket No. 13-2 at ECF p. 17). Then, at Step 3, the ALJ recognized "due to a recent Ruling on fibromyalgia, the undersigned recognizes that the record contains a number of references to the foregoing condition. However, SSR 12-2p provides that fibromyalgia cannot meet a listing in appendix 1 because it is not a listed impairment." (Docket No. 13-2 at ECF p. 19). This is the total sum of the ALJ's Step 3 discussion of Ms. Rardin's fibromyalgia. The Commissioner justifies the ALJ's Step 3 fibromyalgia analysis by providing that the state agency physicians opined Rardin's condition did not meet or equal any listed impairment, and Plaintiff has not pointed to any contradictory opinion—thus, the ALJ was entitled to rely on the state agency physicians' opinions. This is true. *See Scheck v. Barnhart, 357 F.3d 697, 700 (7th Cir.*

2004) (citing *Scott v. Sullivan*, 898 F.2d 519, 524 (7th Cir. 1990)). However, while the Commissioner cited this evidence in her brief for this specific proposition, the ALJ's general reference to the state agency physicians' findings was insufficient to enable this court to determine whether the ALJ properly relied on this evidence when performing his analysis pursuant to SSR 12-2p, or whether he simply overlooked the requisite analysis altogether. (Docket No. 13-2 at ECF p. 32). In other words, he did not build the necessary logical bridge from the record to his conclusion to ensure to this court that he considered whether fibromyalgia met or equaled another listing. *See Murphy*, 759 F.3d at 815. Accordingly, this matter must be remanded for further explanation from the ALJ.

  **B. The ALJ Did Not Use Ms. Rardin's Treatment Non-Compliance as a Basis for Disability Denial, thus Committed No Error in that Respect, but Did Err in Failing to Determine Whether Good Cause Existed Before Using Non-Compliance as a Basis to Discount Ms. Rardin's Credibility.**

  Ms. Rardin next argues that the ALJ unjustly used her noncompliance with treatment when the noncompliance was largely due to a good cause—her lack of financial means or insurance coverage to afford treatments, medications, and follow-up appointments. (Docket No. 16 at ECF p. 19). Ms. Rardin argues that the reliance on her noncompliance was impermissible to use as to the ALJ's overall disability finding and as to his credibility determination of Plaintiff. *Id.* She argues that the record is replete with statements of Rardin's lack of financial means or insurance coverage to afford treatments, medications, and follow-up appointments. Thus, the ALJ impermissibly used Rardin's noncompliance as a factor in his denial and as a factor in assessing her credibility when good cause for refusing treatment existed. *Id.*

  The regulations permit an ALJ to deny benefits based on the failure to follow prescribed treatments if certain requirements are met, including if there is no good cause for refusing the treatment. 20 C.F.R. § 404.1530, § 416.930; *see also DeFrancesco v. Bowen*, 867 F.2d 1040 (7th

Cir. 1989). However, an inability to afford prescribed treatment is commonly accepted as a good cause for refusing treatment. SSR 82-59.

The court agrees with the Commissioner that the ALJ directly stated he was not relying on the aforementioned regulations in his denial of benefits. (Docket No. 13-2 at ECF p. 25). In fact, the ALJ provided:

> [R]egarding the noted compliance, 20 CFR 404.1530 and 416.930 dictate that for a claimant to receive benefits, the claimant must follow the treatment prescribed by their physician if that treatment can restore their ability to work, unless a good reason is shown by the claimant. Here, *the undersigned did not make a decision based upon the foregoing Regulation*, but notes the claimant's failure to follow her prescribed regiment detracted from her allegations regarding the severity and limiting nature of her severe musculoskeletal impairments."

(Docket No. 13-2 at ECF p. 25). Therefore, it is clear that the ALJ's disability denial was not due to Ms. Rardin's noncompliance with treatment.

A different question is the ALJ's use of Ms. Rardin's noncompliance in his credibility determination. As provided before, the ALJ's credibility findings will not be overturned by a court unless they are "patently wrong." *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000). However, a decision regarding a claimant's credibility "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001) (citing SSR 96-7p). Thus, the ALJ is required to state which of the complaints he rejected and why such complaints were unsupported by the record. *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000).

Here, the ALJ noted that Ms. Rardin failed to return for physical therapy, "NO Show-ing" for five of her seven sessions at one point. (Docket No. 13-2 at ECF p. 25). The ALJ recognized that at times the claimant reported financial constraints, but there was no mention of cost limitations to her post-operative care. *Id.* Moreover, the ALJ noted that Ms. Rardin stopped using her sling without physician approval. *Id.* The ALJ did not employ the regulation to deny Ms. Rardin benefits based on her noncompliance, but did note that "the claimant's failure to follow her prescribed regiment detracted from her allegations regarding the severity and limiting nature of her severe musculoskeletal impairments." *Id.*

SSR 96-7p is applicable in Ms. Rardin's favor. It provides, in pertinent part:

> [T]he adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment. The adjudicator may need to recontact the individual or question the individual at the administrative hearing in order to determine whether there are good reasons the individual does not seek medical treatment or does not pursue treatment in a consistent manner. The explanations provided by the individual may provide insight into the individual's credibility.

SSR 96-7p. Moreover, the ruling sets forth examples for why a claimant may chose not to seek medical treatment, such as "the individual's daily activities may be structured so as to minimize symptoms to a tolerable level or eliminate them entirely, avoiding physical or mental stressors that would exacerbate the symptoms . . . [or that] the individual may be unable to afford treatment and may not have access to free or low-cost medical services." *See id.*

The court finds that the ALJ did not question Rardin at the administrative hearing or at a later time regarding the fact that she "no showed" for her physical therapy or that she was non-compliant with her sling. In addition, Rardin testified that she doesn't have insurance and was

therefore unable to use a TENS unit as recommended by Dr. Maynard. ([Docket No. 13-2 at ECF p. 54](#)). The ALJ's only question to Rardin regarding finances was who paid for her cigarettes. ([Docket No. 13-2 at ECF p. 68](#)).

The Commissioner's argument that the ALJ also noted non-compliance issues that did not incur additional costs, such as removing her sling and using her shoulder more than recommended, does not save the ALJ's assessment. First, financial hardship is not the only "good reason" for non-compliance and the ruling requires the ALJ to do more digging whenever the record was replete of a reason for the noncompliance. Second, the ALJ's decision itself, which said "there is no mention of cost limitations to her post-operative care" makes it quite evident that more questions needed to be asked before the ALJ uses Ms. Rardin's noncompliance in his credibility determination. ([Docket No. 13-2 at ECF p. 25](#)). Once the ALJ recognized the record did not contain an explanation for Ms. Rardin's noncompliance, the ruling mandated that he not draw an inference from the noncompliance. [SSR 96-7p](#). In doing so, the ALJ's determination was patently wrong. *[Clifford v. Apfel, 227 F.3d 863 (7th Cir. 2000)](#)*.


### C. The ALJ Did Not Err in Addressing Rardin's Moderate Limitations in Maintaining Concentration, Persistence, or Pace, Memory Deficits, or Severe Daytime Fatigue

Next, Ms. Rardin argues that the ALJ made errors in his RFC determination and hypotheticals to the vocational examiner with regards to her mental limitations. ([Docket No. 16 at ECF pp. 23-27](#)). First, she asserts that the ALJ's RFC/hypotheticals did not appropriately handle her moderate impairments in concentration, persistence, and pace and memory deficits. Specifically, Ms. Rardin points out that the Seventh Circuit has repeatedly rejected language

similar to the ALJ's limitation of "simple, routine, and repetitive tasks" on the basis that it does not adequately inform the vocational expert of the limitations caused by a claimant's mental impairments. Second, she argues that the ALJ's RFC/hypotheticals failed to address her severe daytime fatigue.

The Commissioner responds that while there are situations where a limitation to simple, routine, and repetitive tasks would be insufficient to accommodate moderate difficulties in concentration, in this case the ALJ's RFC determination was supported by substantial evidence and sufficiently explained. (Docket No. 21 at ECF pp. 12-13). The Commissioner notes the ALJ's observation that although the evidence indicated that Ms. Rardin had moderate limitations in concentration, persistence, or pace, the evidence did not suggest that the functional impact of those limitations was any greater than that opined by the state agency reviewing psychologists. (Docket No. 21 at ECF p. 12). In regards to Ms. Rardin's alleged severe daytime fatigue, the Commissioner argues that the ALJ appropriately addressed reasons that Plaintiff's allegations about the severity of her limitations were not credible. (Docket No. 21 at ECF p. 13).

The Seventh Circuit requires the ALJ to include the claimant's limitations in both his residual functional capacity and the hypotheticals to the vocational examiner. *Similia v. Astrue*, *573 F.3d 503, 520-21 (7th Cir. 2009)*. The cases suggest that the most effective way to ensure that the VE is apprised fully of the claimant's limitations is to include them in the hypothetical. *O'Connor-Spinner v. Astrue*, *627 F.3d 614, 619 (7th Cir. 2010)*. However, the Seventh Circuit does not have "a per se requirement that this specific terminology ('concentration, persistence and pace') be used in the hypothetical in all cases." *Id.* A hypothetical is sufficient "when it was manifest that the ALJ's alternative phrasing specifically excluded those tasks that someone with the claimant's limitations would be unable to perform." *Id.*

Here, the ALJ asked an original hypothetical and then added limitations to that hypothetical. In response to the first hypothetical, which is not relevant to this analysis, the VE indicated that Rardin could work as a marker, routing clerk, and photographic finisher. ([Docket No. 13-2 at ECF p. 71](#)). These are the same jobs included in the ALJ's final decision. ([Docket No. 13-2 at ECF p. 33](#)). From there the ALJ provided additional limitations to the VE in order to determine if they would affect the jobs the VE identified. In the second hypothetical, the ALJ added the limitation of "simple, routine, repetitive tasks; frequent problems maintaining focus and concentration," to which the VE responded this limitation would not affect claimant's ability to do the aforementioned jobs. ([Docket No. 13-2 at ECF pp. 71-72](#)). Similarly, the ALJ's final RFC included, in relevant part, "[l]astly, due to focus, concentration, persistence and/or pace limitations due to any cause, the claimant is further limited to work comprised of simple, routine and repetitive tasks." ([Docket No. 13-2 at ECF p. 23](#)).

The court finds that the ALJ's hypotheticals and RFC's met the standards set forth in *O'Connor-Spinner* and its lineage. In regards to the hypothetical, the ALJ not only included "simple routine, repetitive tasks," but the additional limitation of "frequent problems maintaining *focus and concentration*." ([Docket No. 13-2 at ECF p. 72](#)) (emphasis added). Likewise, in the RFC the ALJ included the precise terminology, "concentration, persistence and pace." ([Docket No. 13-2 at ECF p. 23](#)). The cases indicate that the use of this precise terminology is sufficient to ensure that the vocational examiner is appropriately apprised of a claimant's deficiencies, as is indicated by the Seventh Circuit's language that "it is not necessary that the ALJ use this precise terminology ("concentration, persistence and pace"). . ." *O'Connor-Spinner*, [627 F.3d at 619](#). This language illustrates that although using concentration, persistence, and pace is not required it is certainly sufficient when the terms are used. Here, the terms were used in both the

hypothetical and the RFC. This makes this case distinguishable from *Jelinek v. Astrue*, which Ms. Rardin relies on heavily in her brief, because in that case the ALJ limited his questioning to the claimant's ability to "exert herself physically" only, altogether ignoring the mental limitations that were evident in the record. 662 F.3d 805, 813-14 (7th Cir. 2011). In that case, the error had actually occurred at an earlier step when the Court found that the ALJ failed to analyze a physician's opinion, which as a result led to an inadequate RFC finding and hypothetical. *id.*

Ms. Rardin also argues that the RFC and hypothetical did not account for her alleged memory limitations. However, the ALJ provided an in depth review and analysis of Ms. Rardin's reported memory loss at Step 3,and explained that throughout the medical records.  Plaintiff was regularly observed to be alert and oriented, with normal memory, fund of knowledge, and mental functionality. (Docket No. 13-2 at ECF p. 21). He cited several pages of medical evidence where it was indicated that Ms. Rardin had "normal attention span and concentration," "adequate attention, concentration and memory," and reports from consultative examiner Richard J. Casserly, Psy. D., and the results of memory testing conducted by psychologist Paul Bolinskey, Ph. D. *Id.* The ALJ noted Dr. Casserly concluded that, despite some difficulty with serial seven subtraction, Plaintiff had an intact memory, thought processes, and money management skills. *Id.* The ALJ also noted that Dr. Bolinsky concluded based on his observations and test results that Plaintiff had no significant memory dysfunction. The ALJ concluded that although the evidence indicated that Plaintiff had moderate limitations in concentration, persistence, or pace—which was included in the RFC and hypotheticals—the evidence did not suggest that the functional impact of those limitations was any greater than that opined by the state agency reviewing psychologists. *Id.* This analysis is sufficient to show why additional limitations were not necessary. *See O'Connor-Spinner, 627 F.3d at 619*.

Finally, Rardin indicates that the ALJ failed to account for her alleged severe daytime fatigue in his RFC or in his hypotheticals to the VE. (Docket No. 16 at ECF pp. 24-26). The record shows that Rardin frequently provided subjective reports to her doctors alleging progressive daytime fatigue, easy fatigability, difficulties staying awake during the day, insomnia, and low energy. A polysomnogram conducted by Dr. Samaan was negative for obstructive apnea and only showed mild hypoxemia and increased periodic limb movements. (Docket No. 13-7 at p. 39). Ms. Rardin rests her argument related to daytime fatigue almost entirely on subjective reports of symptoms and the ALJ provided sufficient analysis as to why the medical records do not reflect significant problems with concentration or memory, regardless of cause. (Docket No. 13-7 at ECF p. 21, 29-31). He noted claimant's allegations were inconsistent with testing that showed no significant memory loss and improvement in sleep. *Id.*

In sum, the ALJ's residual functional capacity and hypotheticals to the VE sufficiently addressed the totality of the claimant's limitations as related to Rardin's moderate limitations in maintaining concentration, persistence or pace, memory deficits, and allegations of daytime fatigue.

### D. The ALJ Did Not Err in Finding that Plaintiff's Condition Did Not Meet or Equal Listing 1.04

Finally, Ms. Rardin argues that the ALJ failed to provide an explanation regarding the finding that her impairments do not meet or equal Listing 1.04 and to obtain a medical opinion as to the possible equaling of the Listings. (Docket No. 16 at ECF p. 28-33). Ms. Rardin contends that the ALJ has no trained medical knowledge or experience to justify making the finding that "the record [was] devoid of evidence of nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis *with accompanying ineffective ambulation* as defined in 1.00(B)(2)(b)" (Docket No. 13-2 at p. 19) (emphasis in the original). Rardin argues this is the type of perfunctory

analysis that the court has repeatedly found inadequate to dismiss an impairment as not meeting or equaling a listing. (Docket No. 16 at ECF p. 30). Moreover, Rardin argues that the ALJ erred in his failure to obtain a medical opinion on the issue because the ALJ should obtain an updated medical opinion where additional evidence is received that could modify the State Agency medical consultant's findings that an impairment was not equivalent to any of those in the listings. (Docket No. 16 at ECF p. 31).

The Commissioner responds that the ALJ offered more than a perfunctory explanation as to why Ms. Rardin did not meet Listing 1.04. (Docket No. 21 at ECF p. 5). Specifically, the Commissioner argues that the ALJ noted there was no evidence of nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis combined with the inability to walk effectively, as defined by the regulation. *Id.* Moreover, the Commissioner argues that the ALJ was not obligated to obtain additional opinions on the issue of listing equivalence because none of the evidence suggests that Ms. Rardin's condition could have met or equaled the listing or had substantially changed since the available opinions were authored. (Docket No. 21 at ECF p. 8).

"[A] claimant is eligible for benefits if [she] has an impairment that meets or equals an impairment found in the Listing of Impairments." *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citing 20 C.F.R. § 404.1520(d); 20 C.F.R. Pt. 404, Subpt. P., App. 1). "In considering whether a claimant's condition meets or equals a listed impairment, the ALJ must discuss the listing by name and offer more than a perfunctory analysis of the listing." *Id.* (citing *Brindisi ex rel. Brindisi v. Barnhart*, 315 F.3d 783, 786 (7th Cir. 2003)).

Listing 1.04 requires a disorder of the spine resulting in compromise of a nerve root or spinal cord, and one of the following:

> A. Nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss

accompanied by sensory or reflex loss, and if involving the lower back, a positive straight-leg raising test in the sitting and supine positions; or

B.  Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, result in need for changes in position or posture more than once every two hours; or

C.  Lumbar spinal stenosis resulting in psuedoclaudication, established by finding on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, resulting in an inability to ambulate effectively.

20 C.F.R. Pt. 404, Subpart P, App. 1, § 1.04. If Plaintiff cannot establish each element of a subpart, she cannot meet listing 1.04. At the outset, the court notes that Ms. Rardin does not argue that she meets an impairment under Listing 1.04, which would be her burden to prove. *See Ribaudo v. Barnhart*, 458 F.3d 580, 583 (7th Cir. 2006) (noting that the claimant "has the burden of showing that [her] impairments meet a listing, and [she] must show that [her] impairments satisfy all of the various criteria specified in the listing"). She merely takes issue with the ALJ's findings that "the record [was] devoid of evidence of nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis **with accompany ineffective ambulation**" as defined in the listing. (Docket No. 13-2 at ECF p. 19) (emphasis in original).

In making that assessment at Step 3, the ALJ noted that Plaintiff's treating physician, Dr. Maynard, recorded that Plaintiff had no sensory, motor, or reflex deficits that would suggest nerve root compression. (Docket No. 13-2 at ECF p. 19). Furthermore, elsewhere in his decision, the ALJ noted that Ms. Rardin's gait was described as normal, despite one notation by a consulting physician that she had a limp. (Docket No. 13-2 at ECF p. 24, 26, 27) (citing evidence at Docket No. 13-7 p. 78; Docket No. 13-8 p. 21; Docket No. 13-9 at ECF p. 7; Docket No. 13-9 at ECF p. 13; Docket No. 13-9 at ECF p. 28; Docket No. 13-9 at ECF p. 45; Docket No. 13-9 at

ECF p. 53, etc.). The Seventh Circuit recognizes that an ALJ's findings and discussion from one part of his decision may be imputed to another aspect of the analysis. *Rice v. Barnhart*, 384 F.3d 363, 370 (7th Cir. 2004). The ALJ's decision must be read as a whole and it is a "needless formality" to insist that the ALJ repeat similar factual analyses at each step of her decision. *Id.* at 370 n.5.

Here, the evidence Plaintiff relies on to assert the ALJ erred is addressed and discussed in the decision. For instance, the report of consultative examiner Dr. Hefflin was considered by the ALJ, but he concluded that Dr. Hefflin's one-time examination did not outweigh the numerous observations by treating physicians that Ms. Rardin's gait was normal. (Docket No. 13-2 at ECF p. 26-27). Similarly, the ALJ discussed the MRI results referenced in Ms. Rardin's brief. (Docket No. 13-2 at ECF p. 24). The ALJ also noted that Ms. Rardin had several positive straight leg raise tests, one element of listing 1.04(A), but noted that at least one of those tests was accompanied by physician notes that there was no evidence of sensory or motor deficits. (Docket No. 13-2 at ECF pp. 25-27, citing Docket No. 13-14 at ECF p. 93). Therefore, though sporadic positive straight leg raise test may satisfy part of 1.04(A), the ALJ noted additional evidence demonstrating Plaintiff could not satisfy the motor or sensory loss element. In sum, the ALJ thoroughly considered the evidence and provided more than a perfunctory analysis as to why Ms. Rardin did not meet Listing 1.04.

Finally, Ms. Rardin argues that the ALJ's failure to obtain a medical opinion on whether claimant's condition equals a listed impairment was error. (Docket No. 16 at ECF p. 31). The Commissioner counters that the ALJ was not obligated to obtain any additional opinions on the issue of listing equivalence as he was entitled to rely on the state agency physician's opinions that Ms. Rardin did not meet or equal a listing impairment. (Docket No. 21 at ECF p. 8).

Whether a claimant's impairment equals a listing is a medical judgment, and an ALJ must consider an expert's opinion on the issue. *See* [20 C.F.R. § 404.1526(b)](#) ("Medical equivalence must be based on medical findings . . . We will also consider the medical opinion given by one or more medical or psychological consultants designated by the Commissioner in deciding medical equivalence."); [SSR 96-6P at 3](#) ("[L]ongstanding policy requires that the judgment of a physician (or psychologist) designated by the Commissioner on the issue of equivalence on the evidence before the administrative law judge or the Appeals Council must be received into the record as expert opinion evidence and given appropriate weight."), *reinstating* SSR. 83-9). Here, the ALJ relied on claimant's primary clinician's note that there was no evidence of sensory, motor, or reflex change to suggest any nerve root compression. ([Docket No. 13-2 at ECF p. 19](#)). Moreover, the ALJ provided partial deference to the opinions of two state-agency physicians who reviewed the record and concluded that Ms. Rardin did not meet or equal any listing. ([Docket No. 13-2 at ECF p. 32](#)). The reviewing physicians' listings findings were also reflected in the state-agency Disability Determination and Transmittal forms. ([Docket No. 13-3 at ECF p. 13](#); [Docket No. 13-3 at ECF p. 27](#)). The Seventh Circuit has stated that, in the absence of contrary medical opinions, the opinions of state-agency reviewing physicians constitute substantial evidence as to whether a claimant meets or medically equals any listings. *[Scheck v. Barnhart, 357 F.3d 697, 700 (7th Cir. 2004)](#)*; *see also* [SSR 96-6p](#). There are no medical opinions in the record opining that Ms. Rardin's condition met or equaled Listing 1.04, thus the ALJ was entitled to rely on the state agency physician's opinions. *See [Scheck, 357 F.3d at 700](#)*.

Ms. Rardin asserts that [SSR 96-6p](#) requires an ALJ to obtain an updated medical opinion where additional evidence is received that could modify the State Agency medical consultant's finding that impairment was not equivalent in severity to any impairment in the Listing of

Impairments. ([Docket No. 16 at ECF p. 31](#)). However, Ms. Rardin fails to cite any additional evidence. Thus, this court finds the ALJ provided a sufficient analysis to build a logical bridge from the evidence to his conclusions at Step 3 and that the ALJ did rely on expert's opinion on the issue of whether Listing 1.04 was met.

### Conclusion

For all these reasons, the Magistrate Judge recommends that the Court grant Plaintiff's brief in support of appeal ([Docket No. 16](#)) and that this case be remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further consideration, consistent with this opinion.

Any objections to the Magistrate Judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1). Failure to file timely objections within fourteen days after service shall constitute waiver of subsequent review absent a showing of good cause for such failure.

**SO RECOMMENDED** the 6th day of February, 2017.

Matthew P. Brookman
United States Magistrate Judge
Southern District of Indiana

Served electronically on all ECF-registered counsel of record.